For Plaintiff: Hogan & Hogan.

For Defendant: R. J. McMahon.

---

Charlotte E. Descy
vs.
Edmond F. Descy

Div.No.20103

RESCRIPT

May 19, 1927

BAKER, J. The grounds set out in the petition are continued drunkenness, extreme cruelty and gross misbehavior.

To the petition the respondent filed a recriminatory plea, setting out in substance that the petitioner herself had been guilty of conduct constituting gross misbehavior.

The facts show that the parties are of middle age and have been married many years. They have a considerable number of children. It further appears that a few years ago the respondent transferred to the petitioner all his real estate, which at the present time is of considerable value.

The testimony introduced by the respondent in support of his plea tends to show that the petitioner for the last two or three years has been going out in an automobile more or less frequently with one Gouval, a former

friend of the respondent. The petitioner claims that on practically all these occasions she had some friend or relative with her and that the machine in which they were was never parked with the lights out and that nothing improper of any kind took place. She says that the great majority of these trips were taken when she was following the respondent or ascertaining his whereabouts, having become suspicious of his actions.

The respondent, in support of his plea, placed on the stand several witnesses who testified in substance that at various times and places they had seen the petitioner riding with Mr. Gouval and that they had seen them in an automobile parked with the lights out. There is no testimony of any kind in the case tending to show any improper conduct beyond these facts, or that the parties were ever seen in any compromising position.

Some doubt is thrown upon the veracity of one of the respondent's witnesses on this point because of the fact that he was obviously mistaken in regard to the registration number of Mr. Gouval's automobile at a certain date. Some of the other witnesses introduced by the respondent in connection with the testimony in support of his plea did not impress the Court particularly favorably.

Granting that the petitioner has been indiscreet in being as much in Mr. Gouval's company as the testimony would tend to show after careful consideration the Court feels that it can not say that the evidence relating to the respondent's plea proves anything in the nature of gross misbehavior on the part of the petitioner. At best it merely raises suspicion and the Court does not believe the testimony is strong enough to prevent the petitioner from proceeding with her petition.

As to the petitioner's charges, the Court in this State has clearly laid down what constitutes continued drunkenness.

Bevan vs. Bevan, 44 R. I. 12 and other cases.

The facts in this case show, in the judgment of the Court, that while the respondent used liquor to a considerable extent (See Petitioner's Exhibit A), nevertheless they fall far short of proving him guilty of continued drunkenness as alleged in the petition. It is not denied that he attended regularly to his business, working from early in the morning till late at night; that for many years he would take his smaller children each morning to school; that he was successful, apparently. in his business and accumulated considerable property.

The evidence relating to this ground in the petition is given chiefly by the petitioner and in view of all the other facts in the case, in the opinion of the Court, is not sufficiently substantiated.

The next ground urged by the petitioner is that of extreme cruelty.

The evidence dealing with this phase of the petition appears to the Court to be rather meager. There is testimony tending to show that about a year before the separation the respondent struck the petitioner on the neck. This occurrence is somewhat explained in the respondent's testimony. There is evidence that at some time prior to this there was one other use of physical force. The petitioner also claims that for a long period of time the respondent called her vile names. Nothing appears in the case to show that these actions of the respondent, if they took place, affected in any way the petitioner's health, either mentally or physically. She continued to live with him for many years while these occurrences were taking place and bore him children. Many of the incidents testified to by the petitioner are denied by the respondent. He says that he did not call his wife vile names.

It seems well settled that a single act of violence or isolated instances

of cruelty repeated at considerable intervals are not sufficient to support a petition for divorce on the ground of extreme cruelty. A consideration of the testimony here satisfies the Court that it is not sufficiently clear and convincing to justify the granting of the petition on this ground.

In the judgment of the Court the principal question presented is that relating to the allegation of gross misbehavior.

It would appear that for two or three years prior to the separation of the parties in April 1926, the petitioner, a woman of middle age, became somewhat suspicious of her husband's conduct and from time to time for a period of eighteen months or so followed him to ascertain what he was doing. The petitioner's testimony, if believed, would seem to show that on occasions respondent was seen to take girls or women into his automobile and at times he would be seen to drive in the direction of Bellingham where he had a summer camp. During this period nothing more definite was ascertained by the petitioner or appears in the testimony as to respondent's actions. He denies in large part these incidents testified to by the petitioner.

The chief basis for the allegation now being considered must rest upon an occurrence which took place on the evening of April 22, 1926. A few days earlier the petitioner had employed a man and a woman detective. They testified that on the evening in question they followed the respondent, who had a woman in his automobile, to his camp; that they then turned back to Woonsocket to get the petitioner but met the petitioner and her sister driving in an automobile but a short distance away from the camp, and that all four parties immediately returned there. After some knocking, the respondent and the woman appeared, both fully clothed; some talk took place during which the petitioner and her witnesses say

that the respondent admitted he was at the place for no good purpose, which statement the respondent emphatically denies. After taking the name of the woman and her address, the parties returned to Woonsocket. No one has seen or been able to find this woman since.

The petitioner argues that the respondent was at the camp for immoral puposes. The latter testifies that he never saw the woman before; that she desired to rent his cottage for the summer and he took her there early in the evening at her request to show her the place, and that they had been there only a short time when the petitioner, her sister and the two detectives arrived, and that nothing improper was done or intended.

The question for determination on the testimony is not without difficulty. The evidence of the two detectives, particularly in relation to the age of the woman, the question of lights in the cottage. the length of time before the respondent answered the knocking, and as to whether or not the man detective had a revolver, is conflicting, and in general not very satisfactory. It is well recognized that testimony given by paid detectives should be carefully scrutinized and weighed. Considerable doubt as to the good faith of the so-called raid has been raised in the Court's mind because of the fact that the petitioner and her sister were so close to the scene. They explain this by saying that they were out riding because they thought that the respondent might be in the direction of the camp that evening, but the explanation, in the judgment of the Court, does not ring very true.

On the other hand, the petitioner argues that the respondent's explanation that he was taking the woman to the camp because she wanted to hire it was not made until some time afterwards. It is rather interesting to note that in a letter (Petitioner's Exhibit A), written by the respondent

to the petitioner some three or four weeks after this occurrence, it is not in any way referred to. This is explainable if the respondent's position is believed, namely, that he was there on an ordinary business errand and that nothing out of the way was done or intended at the camp. The letter was written prior to the bringing of the divorce proceedings and the respondent may not have known or realized that the incident at the camp would be the basis for a charge of gross misbehavior. In that letter he says the cause of the trouble between the parties is the nature of his business and the frequency of his necessary absences from home. It seems somewhat strange to the Court that if the petitioner, with friends, has been following the respondent for some eighteen months, that nothing more definite in regard to his actions was ascertained. The mere occasional inviting of women or girls into his automobile for the purpose of taking them somewhere, even if occurring as the petitioner claims, does not in the judgment of the Court, although indiscreet, constitute gross misbehavior. On this phase of the case, the burden of proof is with the petitioner to show by clear and convincing testimony that the respondent has been guilty as charged. After carefully weighing all the evidence in this connection, the Court can not say that the petitioner has sustained this burden. At most a doubt or a suspicion has been raised as to the respondent's conduct and that is not sufficient in the eyes of the law to permit the granting of a divorce.

The Court believes, therefore, that as none of the three grounds set out in the petition have been substantiated by a fair preponderance of the testimony, the petition should be denied and dismissed.

For Petitioner: J. J. Mee.

For Respondent: Rosenfeld & Hagan.